IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEVEN T. HUFF FAMILY, LLC | ) | |
| PENSMORE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case no.: 6:15-CV-03214-BP |
| | ) | |
| v. | ) | |
| | ) | |
| THE MONARCH CEMENT COMPANY, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUGGESTIONS IN SUPPORT OF DEFENDANT THE MONARCH CEMENT
<u>COMPANY'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF UNCONTROVERTED MATERIAL FACTS ..................................... 1

III.    SUMMARY JUDGMENT STANDARD ..................................................................... 8

IV.     ARGUMENT ................................................................................................... 8

      A.     Monarch Is Entitled To Summary Judgment On Plaintiffs' Claims Based On Direct Liability ................................................................................................. 8

           1.     Monarch cannot be held directly liable for fraud. .................................. 10

           2.     Monarch cannot be held directly liable for breach of contract. ............... 10

           3.     Monarch cannot be held directly liable for breach of the implied covenant of good faith and fair dealing. ................................................. 11

           4.     Monarch cannot be held directly liable for promissory estoppel. ............. 12

           5.     Monarch cannot be held directly liable for conversion. .......................... 12

           6.     Monarch cannot be held directly liable for unjust enrichment. ............... 13

      B.     Monarch Is Entitled To Summary Judgment On Plaintiffs' Claims Based On Alter Ego Liability. ..................................................................................... 14

           a.     Plaintiffs have no evidence that Monarch exerts the requisite control over City Wide. ................................................................. 16

           b.     Plaintiffs have no evidence that the corporate cloak was used to perpetuate a fraud ....................................................................... 16

           c.     Plaintiffs have no evidence that any control was the proximate cause of Plaintiff's alleged injury. ................................................. 17

      C.     Monarch Can Not Be Held Liable Under A Theory Of *Respondeat Superior*. .... 18

V.      CONCLUSION ........................................................................................... 20

CORE/0053865.0033/130829234.24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ....................................................................................................8

*Bank of Belton v. Bogar Farms, Inc.*,
   154 S.W.3d 518 (Mo. Ct. App. 2005) ..................................................................15, 18

*Blanks v. Fluor Corp.*,
   450 S.W.3d 308 (Mo. Ct. App. 2014) .......................................................................17

*Celotex v. Catrett*,
   477 U.S. 317 (1986) ....................................................................................................8

*Collet v. Am. Nat. Stores, Inc.*,
   708 S.W.2d 273 (Mo. Ct. App. 1986) ........................................................................15

*Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571 (Mo. Ct. App. 2000) ...........................10

*Danella Sw., Inc. v. Sw. Bell Tel. Co.*,
   775 F. Supp. 1227 (E.D. Mo. 1991), aff'd, 978 F.2d 1263 (8th Cir. 1992)............12

*Dave Kolb Grading, Inc. v. Lieberman Corp.*,
   837 S.W.2d 924 (Mo. Ct. App. 1992) ........................................................................18

*Echols v. City of Riverside*,
   332 S.W.3d 207 (Mo. Ct. App. 2010) ........................................................................14

*Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257 (Mo. Ct. App. 1995).................14

*Hill v. Wright*,
   No. 4:13-CV-783 JAR, 2013 WL 2631004 (E.D. Mo. June 11, 2013)...................18

*Howard v. Turnbull*,
   316 S.W.3d 431 (Mo. Ct. App. 2010) ........................................................................14

*John W. Smith v. Select Portfolio Servicing, Inc.*,
   No. 2:16-CV-04203-NKL, 2016 WL 4942029 (W.D. Mo. Sept. 15, 2016) ...........11

*K.C. 1986 Ltd. P'ship v. Reade Mfg.*,
   33 F. Supp. 2d 820 (W.D. Mo. 1998).........................................................................18

*Lakeridge Enters., Inc. v. Knox*, 311 S.W.3d 268 (Mo. App. W.D. 2010) ..................10

- ii -

*Patrick V. Koepke Const., Inc. v. Paletta*,
  118 S.W.3d 611 (Mo. Ct. App. 2003) ............................................................. 15, 17

*Patterson Oil Co. v. Verifone, Inc.*,
  No. 2:15-CV-4089, 2015 WL 6149594 (W.D. Mo. Oct. 19, 2015)................................ 10, 14

*R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1 (Mo. Ct. App. 2003) ................... 14

*Rebstock v. Evans Prod. Eng'g Co., Inc.*, 4:08CV01348 ERW, 2009 WL 3401262,
  at *10 (E.D. Mo. Oct. 20, 2009) ........................................................................... 19

*Riley v. Lance, Inc.*,
  No. 05-0520-CV-W-DW, 2006 WL 2711611 (W.D. Mo. Sept. 21, 2006),
  *aff'd*, 518 F.3d 996 (8th Cir. 2008)....................................................................... 12

*Stockdall v. TG Invs., Inc.*,
  129 F. Supp. 3d 871, 878 (E.D. Mo. 2015) ........................................................... 12

*Sundance Rehab. Corp. v. New Vision Care Assocs. II, Inc.*,
  No. 04-3571-CVS-FJG, 2007 WL 709014 (W.D. Mo. Mar. 5, 2007)............................ 15, 16

*Trinity Lutheran Church v. Lipps*,
  68 S.W.3d 552 (Mo. Ct. App. 2001) ...................................................................... 19

*Weitz Co. v. MH Washington*,
  631 F.3d 510 (8th Cir. 2011) ................................................................................ 14

*Whittaker v. Kornegay*,
  No. 4:14-CV-00019-SRB, 2016 WL 206477 (W.D. Mo. Jan. 15, 2016).......................... 10

## Other Authorities

Fed. R. Civ. P. 56.................................................................................................... 8

CORE/0053865.0033/130829234.24

## I.    INTRODUCTION

Pensmore, LLC, the owner of an approximately 72,000-square-foot single-family residence near Highlandville, Missouri, known as Pensmore, and its parent company, the Steven T. Huff Family LLC, have brought this suit relating to the concrete supplied by City Wide Construction Products ("City Wide") for the construction of Pensmore. Plaintiffs claim that the concrete supplied did not contain the allegedly requested quantity of steel fibers known as Helix and that the structure must now be torn down. Plaintiffs make this claim in spite of the fact that their own evidence does not support the shortage they allege, despite their continued work to finish Pensmore and even though Plaintiffs have admitted that Pensmore, even with the alleged "shortage" of Helix, is stronger than most structures and accomplishes every or nearly every goal that Plaintiffs claim to have for the home.

For purpose of this Motion, though, all that is relevant is what Plaintiffs can, or more accurately, cannot prove with respect to The Monarch Cement Company ("Monarch"). Plaintiffs have asserted claims against Monarch based on direct liability and on principles of alter ego and *respondeat superior*. Monarch, however, had no involvement in the Pensmore project. Plaintiffs have no evidence to the contrary. Plaintiffs also have no evidence to prove any of the elements necessary to establish alter ego liability or to prove that City Wide or any of its employees were acting on Monarch's behalf with respect to the Pensmore project, which is necessary to establish *respondeat superior* liability. As a result, Monarch is entitled to summary judgment on each and every one of Plaintiffs' claims.

## II.    STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.    Plaintiffs have asserted claims against Monarch for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel in the

- 1 -

alternative, conversion, and unjust enrichment based on direct liability and on principles of *respondeat superior* and alter ego. *See generally* Second Amended Complaint (Doc. 139).

2. In response to an interrogatory served by Monarch asking Plaintiffs[1] to identify all facts, documents and/or anticipated testimony that Plaintiffs contend support their claims that Monarch is directly liable to Plaintiffs, Plaintiffs responded:

> The facts supporting that Monarch is directly liable to plaintiff include, but are not limited to, the fact that all City-Wide employees received their paychecks directly from Monarch, or, received their paychecks only after Monarch approved payroll and directly authorized payment to all of defendants employees; when the Whistleblower refused to participate in the shorting scam, he was fired and stopped receiving a paycheck from defendants; the Helix™ designated for Pensmore was resold, without plaintiff's knowledge, which, to the extent it benefited City-Wide's bottom line, also benefited Monarch's bottom line; the Helix™ designated for Pensmore was used in Monarch's CFO's home, a fact that the Monarch CFO knew, or should have known; winning and maintaining the Pensmore business was so critical to Monarch that its President and Chairman, Walter H. Wulf, Jr. visited Pensmore twice as defendants were building it; and Monarch is directly liable to plaintiff because it – and City Wide – are one in the same, failing to observe corporate formalities as described in answer to Interrogatory No. 1.

Plaintiff's Responses to Defendant Monarch Cement Company's Second Set of Interrogatories, attached hereto as Exhibit 1, at 5-6 (responding to Interrogatory 16).

3. Defendants' Notice of 30(b)(6) Deposition to Plaintiffs identified the matters upon which examination was requested. *See* Defendants' Notice of 30(b)(6) Deposition to Plaintiff, attached hereto as Exhibit 2.

4. When asked if Plaintiffs are claiming that Monarch told them anything that wasn't true, Plaintiffs' corporate representative, Steve Huff, testified that he did not have any direct

---

[1] Plaintiff Pensmore LLC was just recently added to the litigation. It is Monarch's understanding that, to minimize any prejudice caused to the Defendants by adding an additional plaintiff over a year after the deadline for the joinder of additional parties, after the time for serving written discovery requests had passed, and after fact depositions had concluded, that the disclosures and discovery responses of the Steven T. Huff Family LLC and deposition responses of Steven Huff, as corporate representative of Steven T. Huff Family LLC apply equally to Pensmore LLC. As a result, the Statement of Facts refer to Plaintiffs' discovery responses, disclosures and corporate representative's testimony based on that understanding

CORE/0053865.0033/130829234.24

conversations with Monarch and it was impossible for him to answer. Transcript from Deposition of Steven T. Huff as Corporate Representative, excerpts attached as Exhibit 3, at 7:14-8:8; 259:11-260:10.

5. The only representations that Steve Huff, as Plaintiffs' corporate representative, identified of which he is aware that Monarch has made related to Monarch's reference to City Wide on its website and that Monarch was a "big company and had an ethics policy and they were supposedly standing behind their products," but he acknowledged, "I mean, I don't have any specific instance of Monarch saying, you know, to me: We make good cement, and the cement wasn't good. I don't have that kind of instance, if that's what you're asking for." Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 260:11-261:14.

6. When asked about any agreement with Monarch concerning Pensmore, Steve Huff, as Plaintiffs' corporate representative, was unable to identify any agreement. Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 214:5-215:10.

7. The only conversation of which Steve Huff, as Plaintiffs' corporate representative, was aware involving Monarch relating to Pensmore was a conversation between Walter Wulf and Joe Huff. Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 259:11-260:10; 214:5-215:10.

8. Walter Wulf is President and Chairman of the Board of Monarch and City Wide. Affidavit of Debra Roe, attached here to as Exhibit 4, at ¶ 2.

9. Joe Huff, who was employed by Huff Construction Inc. ("Huff Construction") and acted as project manager for the Pensmore project, testified that he only spoke with one person from Monarch, Walter Wulf. Deposition of Joe Huff, excerpts attached as Exhibit 5, at 10:20-11:2; 45:12-47:2. Joe Huff testified that Mr. Wulf came by the project, he thinks out of

- 3 -

curiosity, after City Wide had already begun supplying concrete for the project. *Id.* at 45:12-47:2. Joe Huff testified that he did not discuss any details about the project with Walter Wulf. *Id.*

10.      Gerald "Jerry" Spude, who described himself as "the boss of all the employees" on the Pensmore project, testified he never talked to anyone from Monarch. Deposition of Gerald Spude, excerpts attached as Exhibit 6, at 38:6-12, 45:22-46:2.

11.      Steve Huff, as Plaintiffs' corporate representative, also testified that he has no knowledge of any payment ever being made by Huff Construction, described by Plaintiffs as the "paymaster" for the Pensmore project, to Monarch relating to Pensmore. Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 215:15-20; Second Amended Complaint (Doc. 139) at ¶ 39.

12.      The invoices, batch tickets and account receivable reports relating to the concrete supplied by City Wide for the Pensmore project reflect Huff Construction as the customer and City Wide as the seller. Affidavit of David Calhoun, attached here to as Exhibit 7, at ¶ 4-6 (attaching sample invoices, batch tickets and account receivable reports).

13.      Monarch did not sell concrete to Huff Construction or either Plaintiff. Affidavit of Debra Roe (Ex. 4) at ¶ 3.

14.      City Wide supplied concrete to be used in the construction of Pensmore. Affidavit of David Calhoun, attached here to as Exhibit 7, at ¶ 2.

15.      Don Shuler has never been employed by Monarch. Affidavit of Debra Roe (Ex. 4) at ¶ 4.

16.      Don Shuler was an employee of City Wide from 1995 to 2013. Affidavit of David Calhoun (Ex. 7) at ¶ 7.

- 4 -

17.     Don Shuler testified that he created Heartland Helix in approximately January 2012 while trying to become a distributor for Helix. Deposition of Don Shuler, excerpts attached as Exhibit 8, at 140:21-142:15.

18.     Don Shuler testified that he sold one pallet of the Helix stored at City Wide for the Pensmore project to a gentleman in Kansas and that Joe Huff approved that sale and was paid for the Helix. Deposition of Don Shuler (Ex. 8) at 46:24-47:5; *see also* Deposition of Joe Huff (Ex. 5), at 126:21-127:9 (Joe Huff confirming that Don Shuler requested permission to sell approximately one pallet to a gentleman in Kansas and that Plaintiffs were paid for that Helix).

19.     Don Shuler testified he removed approximately one to two pallets of Helix for a few projects in which he was involved and that he replaced that Helix with Helix he purchased directly from Polytorx, the designer of Helix. Deposition of Don Shuler (Ex. 8) at 43:7-9, 47:13-48:5, 50:17-23; 94:13-16; 153:19-154:8.

20.     When Steve Huff, as Plaintiffs' corporate representative, was asked during his deposition if Plaintiffs have any evidence that anyone from Monarch took any of Plaintiffs' Helix, he responded, "I do not." Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 183:23-184:2.

21.     When Steve Huff, as Plaintiffs' corporate representative, was asked during his deposition if Plaintiffs have any evidence that anyone from Monarch knew that Don Shuler took any Helix without Plaintiffs' permission, he responded, "no." Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 184:14-22.

22.     Mr. Shuler testified that he sold approximately one pallet (36 boxes) of Helix that he took from the Helix that was delivered to City Wide for the Pensmore project to Debra Roe

- 5 -

for use in construction of her home.  Deposition of Don Shuler (Ex. 8) at 50:17-19, 232:23-233:5.

23.     Mr. Shuler testified that the project relating to Ms. Roe's home was his job, not a Monarch job or a City Wide job. Deposition of Don Shuler (Ex. 8) at 175:1-5, 234:6-24.

24.     Ms. Roe paid Mr. Shuler for the Helix.  Deposition of Don Shuler (Ex. 8) at 233:4-5; Affidavit of Debra Roe (Ex. 4) at ¶¶ 5-6 (attaching a copy of the canceled check).

25.     Ms. Roe is the Vice President and Secretary-Treasurer of City Wide and the Chief Financial Officer of Monarch.  Affidavit of Debra Roe (Ex. 4) at ¶ 1.

26.     When Steve Huff, as Plaintiffs' corporate representative, was asked during his deposition if Plaintiffs have any evidence that City Wide or Monarch was ever paid for any of Plaintiffs' Helix, he responded,  "no."  Deposition of Steven T. Huff as Corporate Representative (Ex. 3) at 184:24-185:10.

27.     Under the heading titled, "City Wide is Monarch's Alter Ego" in their Second Amended Complaint, Plaintiffs allege:

> Monarch and City Wide fail to observe corporate formalities and are treated as one entity. At all relevant times, Monarch has dominated and controlled the operations of City Wide, treating it as a division, rather than as an independent corporate entity. In its most recent Annual Report, Monarch asserts: "Monarch has direct control of certain operating companies that have been deemed to be subsidiaries within the meaning of accounting principles generally accepted in the United States of America." Monarch's "direct control of certain operating companies," they admit, includes City Wide. In filing consolidated tax returns with all of its subsidiaries, Monarch's Annual Report reads: "All significant intercompany transactions have been eliminated in the consolidation."
>
> Monarch and City Wide market their products and services under one common business. In fact, Monarch promotes its business as follows: "We don't stop at just making the highest quality cement. The Monarch family of companies extends into the realm of ready-mixed concrete, concrete products, and sundry building materials. Each of these companies has the same dedication to quality and craftsmanship that the Monarch name has represented for nearly a century."

- 6 -

Monarch and City Wide have common officers and directors. All City Wide officers and directors listed on the State of Missouri 2016 Annual Registration Report are also Monarch officers and directors. Walter Wulf Jr. ("Wulf") is the Chairman and President of both Monarch and City Wide. Wulf admits that he is responsible for setting the business policies for both Monarch and City Wide. Deborah Roe ("Roe") is Monarch's Chief Financial Officer and a City Wide director and Board Member. Tony Kasten is Monarch's Controller and a City Wide Vice President. City Wide is the alter ego and/or agent of Monarch such that the separate personalities of the corporations do not really exist, and plaintiffs would be inequitably harmed if City Wide's acts were treated separately and independently of Monarch. The whistleblower received his paycheck from Monarch – not City Wide. Monarch exercises complete control over City Wide's payroll. Last, it was Monarch that generated all invoices related to defendants' work performed at Pensmore.

Second Amended Complaint (Doc. 139) at ¶¶ 17-21.

28.     When asked to identify all facts, documents and/or anticipated testimony that

Plaintiffs contend support their claim that Monarch is liable to Plaintiff for City Wide's alleged

conduct under *respondeat superior* and alter ego principles, Plaintiffs identified the following:

the testimony of Don Shuler, establishing that he was employed by defendants and performing acts on the Pensmore project in the course and scope of his employment; the testimony of James Aubuschon, establishing that he was employed by defendants and performing acts on the Pensmore project in the course and scope of his employment; the testimony of common directors of defendants, Walter Wulf and Deborah Roe; the annual reports of the Monarch cement company for the years including 2008-2016; the admissions, confirmed by Walter Wulf, under oath, that Monarch exercises complete dominion and control over the finances of defendants' subsidiaries; the fact that defendants file consolidated tax returns; and the course of conduct of defendants in marketing the services of every subsidiary as Monarch's own.

Plaintiff's Responses to Defendant Monarch Cement Company's Second Set of Interrogatories

(Ex. 1), at 4-5 (responding to Interrogatory 15).

29.     Don Shuler did not testify that he was employed by Monarch or that he performed

acts on the Pensmore project in the course and scope of employment by Monarch. *See generally*

Deposition of Don Shuler (Ex. 8).

- 7 -

30.     City Wide was formed in 1983.  Affidavit of David Calhoun (Ex. 7) at ¶ 8 (attaching City Wide's Articles of Incorporation (D0003633)).

31.     Monarch acquired City Wide's stock in May 1988.  Affidavit of Debra Roe (Ex. 4) at ¶ 8.

## III.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of showing the absence of any genuine issue of material fact, which can be accomplished by showing that no evidence exists to support the non-moving party's case.  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the burden shifts to the non-moving party to show the existence of a disputed issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The non-moving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Id.*  The mere existence of some alleged factual dispute will not defeat an otherwise meritorious summary judgment motion.  *Id.*

## IV.    ARGUMENT

### A.     Monarch Is Entitled To Summary Judgment On Plaintiffs' Claims Based On Direct Liability.

Plaintiffs have asserted claims against Monarch for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, conversion, and unjust enrichment based on direct liability and on principles of *respondeat superior* and alter ego. Statement of Uncontroverted Material Facts ("SOF") 1.  Plaintiffs' attempt to hold Monarch liable based on principles of alter ego and *respondeat superior* are addressed in Parts IV.B and IV.C.  With respect to Plaintiffs' attempt to hold Monarch directly liable on any of the claims

- 8 -

asserted, such claims fail as a matter of law because Plaintiffs lack any evidence of any duties owed by Monarch to Plaintiffs, of any contract with or promise made by Monarch, or that Monarch had any involvement in any of the conduct alleged.

In response to an interrogatory served by Monarch on Plaintiffs asking Plaintiffs to identify all facts, documents and/or anticipated testimony that Plaintiffs contend support their claims that Monarch is directly liable to Plaintiffs, Plaintiffs responded:

> The facts supporting that Monarch is directly liable to plaintiff include, but are not limited to, the fact that all City-Wide employees received their paychecks directly from Monarch, or, received their paychecks only after Monarch approved payroll and directly authorized payment to all of defendants employees; when the Whistleblower refused to participate in the shorting scam, he was fired and stopped receiving a paycheck from defendants; the Helix™ designated for Pensmore was resold, without plaintiff's knowledge, which, to the extent it benefited City-Wide's bottom line, also benefited Monarch's bottom line; the Helix™ designated for Pensmore was used in Monarch's CFO's home, a fact that the Monarch CFO knew, or should have known; winning and maintaining the Pensmore business was so critical to Monarch that its President and Chairman, Walter H. Wulf, Jr. visited Pensmore twice as defendants were building it; and Monarch is directly liable to plaintiff because it – and City Wide – are one in the same, failing to observe corporate formalities as described in answer to Interrogatory No. 1.

SOF 2.

Although Plaintiffs lack evidence of any of alleged "facts" contained in their discovery response, for purposes of this Motion, what is material is that none of these alleged "facts" create direct liability. As discussed *infra*, none relate to any fraudulent statements made by Monarch, contractual obligations of Monarch, any promises made by Monarch, or any unjust benefit or conversion of property by Monarch. Because Plaintiffs do not have any evidence to prove that Monarch is directly liable under any of the causes of action asserted by Plaintiffs, Monarch is entitled to summary judgment on those claims to the extent they are based on direct liability.

- 9 -

### 1. Monarch cannot be held directly liable for fraud.

"To prove a claim for fraud in Missouri, a plaintiff must show: (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury." *Patterson Oil Co. v. Verifone, Inc.*, No. 2:15-CV-4089, 2015 WL 6149594, at *7 (W.D. Mo. Oct. 19, 2015) (citing *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 580 (Mo. Ct. App. 2000)).

Plaintiffs cannot identify a single false representation made by Monarch. SOFs 4, 5, 7, 8, 9, 10. Because Plaintiffs cannot identify even a single allegedly false representation made by Monarch, Plaintiffs cannot prove Monarch's intent relating to the statement, Plaintiffs' ignorance relating to the falsity of the statement, Plaintiffs' reliance on the statement, Plaintiffs' right to rely on the statement or that Plaintiffs suffered an injury because of the statement—the remaining elements of their fraudulent misrepresentation claim against Monarch based on direct liability. As a result, Monarch is entitled to summary judgment on Plaintiffs' fraud claim to the extent it is based on direct liability.

### 2. Monarch cannot be held directly liable for breach of contract.

"The elements of a breach of contract claim are: '(1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) resulting damage of the other party.'" *Whittaker v. Kornegay*, No. 4:14-CV-00019-SRB, 2016 WL 206477, at *2 (W.D. Mo. Jan. 15, 2016) (citing *Lakeridge Enters., Inc. v. Knox*, 311 S.W.3d 268, 271 (Mo.

- 10 -

App. W.D. 2010)). Thus, to prove a claim for breach of contract, Plaintiffs must have evidence that Plaintiffs had an enforceable contract with Monarch.

Plaintiffs have no evidence that Monarch ever entered into a contract with either Plaintiff or anyone else concerning the concrete to be supplied for Pensmore. SOFs 6-9, 11-13. Instead, the undisputed evidence is that the concrete was supplied by City Wide and that Huff Construction (described by Plaintiffs as the "paymaster" with respect to the Pensmore construction costs) was identified as the buyer or customer relating to the concrete supplied. SOFs 12-14. Again, without any evidence of the existence of a contract between Plaintiffs and Monarch, Monarch is entitled to summary judgment on Plaintiffs' breach of contract claim to the extent it is based on direct liability.

### 3. Monarch cannot be held directly liable for breach of the implied covenant of good faith and fair dealing.

"Missouri law recognizes an implied duty of good faith and fair dealing in every contract. The covenant's purpose is to prevent one party from using an agreement's express terms to deny the other party the expected benefit of the contract or to evade the spirit of the transaction. This implied covenant, however, is not an overflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to obligations not otherwise contained in a contract's express terms." *John W. Smith v. Select Portfolio Servicing, Inc.,* No. 2:16-CV-04203-NKL, 2016 WL 4942029, at *1 (W.D. Mo. Sept. 15, 2016) (internal quotations and citations omitted).

The implied covenant of good faith and fair dealing is read into a contract; thus, it cannot exist if a contract does not exist. As set forth *supra* Section IV.A.2, Plaintiffs do not have any evidence of a contract between themselves and Monarch. As a result, there is no implied covenant of good faith and fair dealing for Monarch to breach. For this reason, Monarch is

- 11 -

entitled to summary judgment on Plaintiffs' breach of the implied duty of good faith and fair dealing claim to the extent it is based on direct liability.

### 4. Monarch cannot be held directly liable for promissory estoppel.

"A claim for promissory estoppel requires: (1) a promise, (2) detrimental reliance on that promise by plaintiff, (3) that defendant could have reasonably foreseen the action plaintiff took in reliance, and (4) injustice can be avoided only by enforcement of the promise." *Riley v. Lance, Inc.,* No. 05-0520-CV-W-DW, 2006 WL 2711611, at *4 (W.D. Mo. Sept. 21, 2006), *aff'd*, 518 F.3d 996 (8th Cir. 2008) "The first essential element of promissory estoppel is that the defendant has made a binding offer in the form of a promise. The promise must be sufficiently definite and delineated to support a claim of detrimental reliance." *Danella Sw., Inc. v. Sw. Bell Tel. Co.*, 775 F. Supp. 1227, 1237 (E.D. Mo. 1991), aff'd, 978 F.2d 1263 (8th Cir. 1992) (internal citations omitted).

Again, Plaintiffs have no evidence that Monarch ever promised them anything. *See* SOFs 4, 5, 7, 8, 9, 10. As a result, as with the previously discussed claims, without any evidence to prove that Monarch even made a promise, Monarch is entitled to summary judgment on Plaintiffs' promissory estoppel claim to the extent it is based on direct liability.

### 5. Monarch cannot be held directly liable for conversion.

"A plaintiff asserting a claim for conversion must show the plaintiff was the owner of the property or entitled to possession, the defendant took possession of the property with the intent to exercise control over it, and the defendant deprived the plaintiff of the right to possession." *Stockdall v. TG Invs., Inc.*, 129 F. Supp. 3d 871, 878 (E.D. Mo. 2015).

Plaintiffs have no evidence that Monarch ever took possession of any Helix that was delivered to City Wide for the Pensmore project. Don Shuler, a former employee of City Wide,

- 12 -

not Monarch, testified that he sold one box of Plaintiffs' Helix to a gentleman in Kansas with Plaintiffs' permission and for which Plaintiffs were paid and that he took another approximately one to two pallets of Helix for a few projects on which he was working during a time when he was attempting to become a Helix distributor.   SOFs 15-19.   He further testified he replaced those boxes after he received a shipment of Helix he purchased directly from Polytorx, the manufacturer of Helix.  SOF 19.  Whether Mr. Shuler replaced the Helix he took is not material to this Motion, nor is the amount of Helix Mr. Shuler took.  What is material is that Plaintiffs have no evidence that Monarch took possession of any of Plaintiffs' Helix. SOF 20.

Although Mr. Shuler testified that, as part of one of his jobs (not a City Wide or Monarch job), he sold approximately one pallet of the Helix to Debra Roe, such Helix was used in Ms. Roe's personal residence as opposed to a structure owned by Monarch.  SOF 22-23.  Ms. Roe personally, not Monarch, paid Mr. Shuler for the Helix.  SOF 24.   Further, Plaintiffs only focus on the fact that Ms. Roe is the Chief Financial Officer of Monarch; they ignore that she is also the Vice President and Secretary-Treasurer of City Wide.  SOF 25.  There is no evidence that Ms. Roe or anyone from Monarch knew that Helix sold by Mr. Shuler to Ms. Roe came from the Helix that was delivered to City Wide for the Pensmore project.  SOF 21.

Because Plaintiffs have no evidence that <u>Monarch</u> took possession of Plaintiffs' property with the intent to exercise control over it, Monarch is entitled to summary judgment on Plaintiffs' conversion claim to the extent it is based on direct liability.

### 6.    Monarch cannot be held directly liable for unjust enrichment.

"[T]o state a claim for unjust enrichment, a plaintiff must show that: (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff;

- 13 -

and (3) it would be unjust to allow the defendant to retain the benefit." *Patterson*, 2015 WL 6149594, at *9.

In support of this claim, Plaintiffs assert that "the Helix™ designated for Pensmore was resold, without plaintiff's knowledge, which, to the extent it benefited City-Wide's bottom line, also benefited Monarch's bottom line." SOF 2. Again, Plaintiffs only have evidence that Don Shuler, when he was trying to become a Helix distributor for Polytorx, removed Helix that he testified he later replaced with Helix he purchased directly from Polytorx. SOF 17-19. Plaintiffs have no evidence that City Wide was enriched by Don Shuler's removal of any Helix, let alone any evidence that Monarch was enriched.[2] SOF 26. As a result, Monarch is entitled to summary judgment on Plaintiffs' unjust enrichment claim to the extent it is based on direct liability.

**B.      Monarch Is Entitled To Summary Judgment On Plaintiffs' Claims Based On Alter Ego Liability.**

Normally, a parent corporation is not responsible for the acts of its subsidiary corporation and the separate legal identities of the two corporations will be protected. *Weitz Co. v. MH Washington*, 631 F.3d 510, 520 (8th Cir. 2011) (citing *Grease Monkey Int'l, Inc. v. Godat*, 916

---

[2] If plaintiffs could directly recover from a parent on a theory of unjust enrichment every time a subsidiary was unjustly enriched, plaintiffs would be able to obtain a windfall, which is unsupported by Missouri law, because they would obtain a double recovery—once from the benefit to the subsidiary and then again from that same benefit flowing through to the parent. "[A] party may not recover duplicative damages for the same wrong. While entitled to be made whole by one compensatory damage award, a party may not receive the windfall of a double recovery." *Echols v. City of Riverside*, 332 S.W.3d 207, 212 (Mo. Ct. App. 2010) (citing *R.J.S. Sec., Inc. v. Command Sec. Servs., Inc.*, 101 S.W.3d 1, 17 (Mo. Ct. App. 2003)). Instead, as discussed infra, a plaintiff can only recover from a parent for the conduct of its subsidiary if the plaintiff is able to make the showing necessary for derivative liability. *See Howard v. Turnbull*, 316 S.W.3d 431, 437 (Mo. Ct. App. 2010) ("For the purposes of unjust enrichment, the owners of a limited liability company do not receive a benefit when a third party pledges collateral to secure a debt incurred by the company. In such cases, the benefit flows to the limited liability company itself, not to the owners of the company.").

- 14 -

S.W.2d 257, 262 (Mo. Ct. App. 1995)); *Collet v. Am. Nat. Stores, Inc.*, 708 S.W.2d 273, 283-84 (Mo. Ct. App. 1986). "This is true even where one corporation owns a part or all of the other." *Collet*, 708 S.W.2d at 283-84. Instances do occur, however, when one corporation shows such domination and control over another that the latter corporation becomes a mere adjunct or the "alter ego" of the first. *Id.* "In such a situation, when the formal corporate separateness and the arrangements between the two corporations is devised or used to accomplish a fraud, injustice, or some unlawful purpose, then the separate formal corporate structures will be ignored." *Id.*

Missouri law recognizes narrow circumstances for piercing the corporate veil, and courts do not take this action lightly. *Bank of Belton v. Bogar Farms, Inc.*, 154 S.W.3d 518, 520 (Mo. Ct. App. 2005). Missouri courts will find one corporation shows such domination and control over the other that the latter "becomes a mere adjunct or 'alter ego' of the first" only when the plaintiff can show:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*Patrick V. Koepke Const., Inc. v. Paletta*, 118 S.W.3d 611, 614-15 (Mo. Ct. App. 2003); *Sundance Rehab. Corp. v. New Vision Care Assocs. II, Inc.*, No. 04-3571-CVS-FJG, 2007 WL 709014, at *3 (W.D. Mo. Mar. 5, 2007) (even after meeting the first two hurdles, "the plaintiff must show that the control and breach of duty proximately caused the injury or unjust loss").

- 15 -

a.  **Plaintiffs have no evidence that Monarch exerts the requisite control over City Wide.**

"In order to pierce the corporate veil, the plaintiff must first show control—not mere majority or stock control, but complete domination, not only of finances, but of policy and business practice <u>with respect to the transaction</u>, such that the corporate entity had no separate mind, will or existence of its own." *Sundance* 2007 WL 709014, at *3 (emphasis added).

Plaintiffs allege that Monarch has direct control of City Wide, significant intercompany transactions have been eliminated for purposes of consolidated tax returns, they market their products and services together, they have common officers and directors, Walter Wulf, who is President and Chairman of the Board of both City Wide and Monarch, sets the business policies for both companies, Monarch processes City Wide's payroll and invoices, the alleged "whistleblower" received his checks from Monarch, not City Wide and Monarch generated the invoices for City Wide's work on the Pensmore project. SOF 27. Even if such allegations are assumed to be fact for purposes of this Motion,[3] such "facts" do not demonstrate that Monarch exercised any control over the transaction at issue—City Wide's sale of Helix-dosed concrete for the Pensmore project.

b.  **Plaintiffs have no evidence that the corporate cloak was used to perpetuate a fraud.**

Even if Plaintiffs had evidence that Monarch exercised the requisite control over City Wide with respect to the Pensmore project, that is only the first step in the analysis. "Even

---

[3] Monarch does not concede such facts. For example, payroll documents and other evidence in this case demonstrates that neither Mr. Shuler nor Mr. Abuschon were employed by Monarch or paid by Monarch but instead that Monarch simply handles certain administrative functions for its subsidiaries, at a cost to its subsidiaries, such as payroll and invoice processing. To avoid any potential attempt by Plaintiffs to dispute such facts, however, Monarch is simply stating that for purposes of this Motion only, Plaintiffs' allegations relating to its claim that "City Wide is Monarch's alter ego" can be assumed true because they are insufficient to satisfy the elements for alter ego liability.

- 16 -

though corporations are related and one has complete control over the other, there can be no piercing of the corporate veil without a showing of impropriety in the establishment or use of the corporate form sought to be disregarded. The determination of whether there is a case for equitable relief, in the face of complete control by a parent over its subsidiary, is decided by the test of whether or not the arrangement involved is being used for a proper purpose." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 376 (Mo. Ct. App. 2014) (internal citations omitted).

City Wide was formed in 1983. SOF 30. Monarch did not acquire any of City Wide's stock until 1988. SOF 31. Plaintiffs have not even alleged, let alone have evidence, that City Wide was formed or that Monarch purchased City Wide stock to perpetuate a fraud or for any other improper purpose. SOF 27-28. As a result, even if Plaintiffs could establish the existence of sufficient control by Monarch over City Wide, they cannot meet the second requirement in the alter ego/veil piercing analysis.

### c. Plaintiffs have no evidence that any control was the proximate cause of Plaintiff's alleged injury.

The final step in the alter ego/veil piercing analysis is that the control of the subsidiary was the proximate cause of the Plaintiff's injury. *Paletta*, 118 S.W.3d at 614-15. Plaintiffs have not even alleged any control that Monarch exercised over City Wide had any impact on the amount of Helix contained within the concrete supplied for the Pensmore project. SOF 27. Again, although Plaintiffs allege that Monarch has control over City Wide, that significant intercompany transactions have been eliminated for purposes of consolidated tax returns, they market their products and services together, they have common officers and directors, that Walter Wulf sets the business policies for both companies, and Monarch processes City Wide's payroll and invoices (*see* SOF 27), even if Plaintiffs could prove such allegations are true, such

- 17 -

"facts" do not demonstrate that Monarch used its control to commit a wrong that caused injury to Plaintiffs.

This is not a case in which the plaintiff has alleged (and has proof) that the parent stripped the subsidiary of its assets for the purpose rendering the subsidiary unable to meet its contractual obligations. *See, e.g.*, *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 937 (Mo. Ct. App. 1992) ("There also was evidence to support a finding that Lieberman's manipulation of Arbor Glen resulted in fraud and promoted injustice. In the instant case, there was ample evidence of Lieberman's undercapitalization of Arbor Glen and its stripping of Arbor Glen's asset. As a result, Arbor Glen was unable to pay for the materials SCOF furnished. There was sufficient evidence to show that Lieberman used Arbor Glen as a subterfuge to accomplish the improper purpose of evading payment to SCOF.") (internal citations omitted); *Bogar Farms,* 154 S.W.3d at 521 (even though the subsidiary was unable to meet its obligations under a loan agreement, the Court of Appeals found that corporate piercing was not appropriate because "[t]he facts do not demonstrate that J & M's control over Bogar Farms was the proximate cause of the insolvency and the Bank's resulting inability to collect its debt from Bogar Farms").

Because Plaintiffs have no evidence to support any of the elements necessary to establish alter ego liability, let alone all three, Monarch is entitled to summary judgment on all of Plaintiffs' claims to the extent they rely on alter ego principles.

## C. Monarch Can Not Be Held Liable Under A Theory Of *Respondeat Superior*.

Under the doctrine of *respondeat superior,* a principal may be held liable to third parties for the acts or omissions of its agents. *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 33 F. Supp. 2d 820, 827 (W.D. Mo. 1998). "To recover under the doctrine of *respondeat superior* the plaintiff must demonstrate (1) the existence of an employer-employee relationship at [sic] time of the alleged

- 18 -

negligence, (2) reliance by the plaintiff on the acts or omissions of the employee, and (3) the employee acted within the scope of the employment or scope of the agency." *Hill v. Wright*, No. 4:13-CV-783 JAR, 2013 WL 2631004, at *1 (E.D. Mo. June 11, 2013) (quoting *Rebstock v. Evans Prod. Eng'g Co., Inc.*, 4:08CV01348 ERW, 2009 WL 3401262, at *10 (E.D. Mo. Oct. 20, 2009)). "*Respondeat superior* is inapplicable unless a master-servant relationship exists between the parties." *Trinity Lutheran Church v. Lipps*, 68 S.W.3d 552, 557 (Mo. Ct. App. 2001).

Under the circumstances of this case, the only way Monarch could potentially be held liable for the acts of City Wide is if City Wide was acting as Monarch's agent to fulfill all or part of Monarch's contractual duties to Plaintiffs. The alleged agreement at issue here, however—for City Wide to supply Helix-dosed concrete to be used to construct Pensmore—did not involve Monarch. Plaintiffs have no evidence that Monarch ever entered into a contract with either Plaintiff or anyone else concerning the concrete to be supplied for Pensmore. SOFs 6-9, 11-13. As a result, because Monarch was not using City Wide or any of City Wide's employees to fulfill Monarch's duties because Monarch had no duties relating to Pensmore to be fulfilled, Monarch is entitled to summary judgment on all of Plaintiffs' claims to the extent they rely on *respondeat superior* liability.[4]

---

[4] Plaintiffs, in response to interrogatories served by Monarch, claimed that "the testimony of Don Shuler, establishing that he was employed by defendants and performing acts on the Pensmore project in the course and scope of his employment" support their claim for alter ego and *respondeat superior* liability. SOF 28. As stated, because Monarch did not have any contract with or owe any duties to Monarch, there would be no work for Don Shuler to perform for Monarch. Further, and more importantly, despite Plaintiffs' unsupported statement to the contrary, Don Shuler did not testify that he was ever employed by Monarch or that any of his work relating to the Pensmore project was performed in the course and scope of such non-existent employment. SOF 29.

- 19 -

## V. CONCLUSION

For the reasons stated herein, Monarch is entitled to summary judgment on all of Plaintiffs' claims against Monarch, regardless if based on direct liability or based on principles of alter ego or *respondeat superior*.[5]

Dated: February 22, 2017

Respectfully Submitted,

*Angela G. Nichols*
Angela G. Nichols MO Bar # 56870
Ashley E. Dillon MO Bar # 65877
Colby B. Nelson MO Bar #66982
STINSON LEONARD STREET LLP
1201 Walnut, Suite 2800
Kansas City, Missouri 64106
Tel:    (816) 842-8600
Fax:    (816) 691-3495
angela.nichols@stinson.com
ashley.dillon@stinson.com
colby.nelson@stinson.com

---

[5] Defendant City Wide also has moved for summary judgment relating to both Plaintiffs' fraud, breach of contract and breach of the implied duty of good faith and fair dealing claims, relating to all of Steven T. Huff Family LLC's claims and relating to Plaintiffs' requested relief. Because Plaintiffs seek to hold Monarch liable on the basis of direct liability, alter ego liability and *respondeat superior* liability based on the same allegations, Monarch is also entitled to Summary Judgment for the reasons stated in City Wide's Motion and Suggestion in Support.

- 20 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of February, 2017, a true and correct copy of the foregoing document was filed electronically via CM/ECF in the United States District Court for the Western District of Missouri, with notice of same being electronically served by the Court, addressed to:

Bryan O. Wade
Ginger K. Gooch
Husch Blackwell LLP
901 St. Louis Street
Suite 1800
Springfield, MO 65806
Tel: (417) 268-4000
Fax: (417) 268-4040
bryan.wade@huschblackwell.com
ginger.gooch@huschblackwell.com

Gabriel Berg
Lana Milojevic
Kennedy Berg LLP
401 Broadway – Suite 1900
New York, NY 10013
Tel: (212) 899-3400
gberg@kennedyberg.com
lmilojevic@kennedyberg.com

ATTORNEYS FOR PLAINTIFFS

*Angela G. Nichols*
Attorney for Defendants

- 21 -