IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEVEN T. HUFF LLC, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 15-3214-CV-S-BP |
| | ) | |
| THE MONARCH CEMENT | ) | |
| COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs Steven T. Huff LLC ("Huff LLC") and Pensmore LLC filed this suit on May 23, 2015, asserting a variety of claims arising from the construction of a structure called "Pensmore." Defendant City Wide Construction, ("City Wide") is alleged to have contracted with Plaintiffs to provide the concrete used to construct Pensmore. City Wide's parent company, Defendant Monarch Cement Company, ("Monarch"), is alleged to be responsible under a theory of alter ego liability. Plaintiffs generally allege that the concrete provided did not conform to the specifications set forth in the contract. The parties have designated experts and filed motions seeking to bar reports and testimony by opposing experts. (Doc. 185, 186, 188, 190, 193, 195.) Two of Plaintiffs' Motions, (Docs. 186, 188), and one of Defendants' Motions, (Docs. 195), are **DENIED** in their entirety. Plaintiffs' Motion to Strike Expert Reports and Testimony of Mark Gentry and Ryan Clark, (Doc. 190), and Defendants' Motions to Exclude Testimony of Luke Pinkerton, (Doc. 185), and David Paris, (Doc. 193), are **DENIED in part and GRANTED in part.**

## I. BACKGROUND

Plaintiff Pensmore, LLC owns a large structure called Pensmore in Highlandville, Missouri. Steven Huff designed Pensmore as an ultra-durable structure by mixing concrete with specially made steel fibers known as "Helix." City Wide entered a contract to mix Helix supplied by Plaintiffs into the concrete used to construct Pensmore. Plaintiffs generally allege that Defendants mixed less than the agreed amounts of Helix into the concrete. The contract for the concrete used at Pensmore "was made principally on a handshake." (Doc. 139, ¶ 31.) The parties have designated a number of experts including engineers, appraisers, and damages experts. The Court discusses the parties' motions to exclude or strike expert testimony or reports below. For ease of discussion, the Court will first address arguments regarding the weight of expert opinions and expert opinions on intentionality. The Court will then discuss the remaining issues expert by expert.

## II. DISCUSSION

Rule 702 of the Federal Rules of Evidence permits someone "who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. The rule permits expert testimony if the expert's "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . the testimony is based upon sufficient facts or data . . . the testimony is the product of reliable principles and methods," and the witness "has reliably applied the principles and methods to the facts of the case." While the Court performs a "gatekeeping" function in evaluating the admissibility of expert testimony, Rule 702 is not a rule of exclusion, and "[a]s long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination rather than excluded by the court at the outset."

2

*Johnson v. Mead Johnson & Co.,* 754 F.3d 557, 562 (8th Cir.), *cert. denied*, 135 S. Ct. 489 (2014) (quoting *Daubert v. Merell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993)).

Case law establishes a list of factors that may be helpful in determining whether an expert's opinion is sufficiently reliable. *E.g., Turner v. Fire Equipment Co.*, 229 F.3d 1202, 1207-08 (8th Cir. 2000) (citing *Daubert*, 509 U.S. at 593-94). However, there is no universal list of factors or requirements. The reliability inquiry varies depending upon specifics of the case at hand, the nature of the opinion rendered, the field of expertise employed, and the facts relied upon to support the opinion. *E.g.*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999); *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1082 (8th Cir. 1999). As a general matter, "the factual basis of an expert opinion goes to the credibility of the testimony, and not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination. . . . . [O]nly if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) (internal quotations omitted).

### A. Arguments that go to the Weight not Admissibility of an Opinion

"Attacks on the foundation for an expert's opinion, as well as the expert's conclusions, go to the weight rather than the admissibility of the expert's testimony." *Sphere Drake Ins. PLC v. Trisko,* 226 F.3d 951, 955 (8th Cir. 2000). "Generally, even post-Daubert, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.,* 401 F.3d 901, 912 (8th Cir. 2005) (quatation omitted). Having reviewed the parties' arguments in light of the caselaw discussed above, the Court concludes the following arguments go to the weight of the expert's opinion and not admissibility:

- Defendants' argument that there is no basis for Luke Pinkerton's conclusion that there was a one-to-two box shortage in the construction of the Pensmore floor and a one

3

box Helix shortage in the Pensmore walls. (Doc. 192, pp. 6-10.) Pinkerton's affidavit outlines the basis for this opinion. (Doc. 192-3, pp. 6-9.)

- Defendants' argument that Pinkerton should not be allowed to testify that the nineteen samples tested by Element are representative of the entire Pensmore structure because there were not enough samples taken and they were not taken at random. Doc. 192, pp. 9-10.). Pinkerton's affidavit outlines the basis for his opinion that the nineteen samples are representative of the entire structure. (Doc. 192-3, pp. 6-7.)

- Plaintiffs' argument that Bernie Shaner's appraisal violates Appraisal Institute Guidelines and is unreliable because of perceived inconsistencies in Shaner's testimony and because it is based on assumptions such as the market for Pensmore and the value of Helix. (Doc. 189, pp. 7-15.)[1] Shaner nevertheless explained the basis for his conclusions and the reasons for the assumptions he made. (Doc. 202-1.)

- Plaintiffs' argument that Mark Gentry's conclusion that the Pensmore project was mismanaged is "pure speculation" because (1) Pensmore is unique and he compared Pensmore to a typical construction site and (2) he relied on affidavits by those with first-hand experience on the site and did not speak with them directly. (Doc. 191, pp. 5-8.) Gentry's affidavit specifies the basis for these conclusions. (Doc. 201-2.)

At trial, it is the parties' responsibility to bring out these issues on direct and cross examination of expert witnesses. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. Thus, the issues raised above are not a basis for striking expert testimony; however, parties may raise these issues on cross-examination.

### B. Testimony Regarding Intentionality

Plaintiffs and Defendants seek to exclude testimony by arguing that various experts will opine that the shortage of Helix was (or was not) intentional. For example:

- Defendants seek to prevent Pinkerton from testifying that the six under-dosed Element samples were the result of intentional under-dosing of Helix. (Doc. 192, pp.12-15.)

---

[1] Thus, Plaintiffs' motion to Exclude Appraisal Report by ValBridge Property Advisors and Testimony of Bernie Shaner, MAI, SRA, (Doc. 188), is denied. Further, in Reply Suggestions, Plaintiffs argue for the first time that the errata sheet submitted by Mr. Shaner should be struck. (Doc. 204, p. 9.) Plaintiffs' request is also denied.

4

- Plaintiffs argue that CTL's report invades the province of the jury because it was asked to investigate whether City Wide deliberately shorted the amount of Helix used at Pensmore. (Doc. 187, pp. 6-10.)[2]

- Defendants argue that David Paris opines in his report that the "shorting scheme" actually occurred. (Doc. 194, p. 18-19.)

The Supreme Court has held that "an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." *Williams v. Illinois,* 567 U.S. 50, 57 (2012). However, "[t]here is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not." *Thomas v. Barze,* 57 F. Supp. 3d 1040, 1059 (D. Minn. 2014).

A review of the documents confirms that Pinkerton's affidavit, (Doc. 192-3), CTL's report, (Doc. 186-1), and Paris' report, (Doc. 194-1) do not conclude there was (or was not) a deliberate shortage. Although Pinkerton stated in his affidavit that "shorting was occurring in full box increments," this does not mean he concluded it was intentional. (Doc. 192-3, ¶ 22.) Likewise, CTL's conclusion that there are three other potential causes of shorting is not a determination of intentionality. Finally, Paris is permitted to make assumptions about the facts in order to opine about damages, and the reference in his report to the "reported shorting scheme" is an appropriate assumption upon which he based his opinions. Thus, the Court reminds the parties that expert testimony on intentionality is not permitted but finds that none of the opinions referenced in the motions make such a determination.

### C. Luke Pinkerton

---

[2] Plaintiffs also argue that the CTL Group supplemental and sur-rebuttal reports should be struck as untimely. (Doc. 187, pp. 10-14.) The Court finds the untimeliness was substantially justified and thus it is unnecessary to analyze the matter further. Plaintiffs' Motion (Doc. 186) is denied.

5

Luke Pinkerton is the President of Polytox d/b/a Helix Steel, the supplier of Helix for Pensmore. Pinkerton is also a civil engineer, has an MBA, and completed a certification program for engineers in statistics. (Doc. 192-3, ¶ 2.) Pinkerton tested the core samples taken by Plaintiffs to determine whether there was a shortage of Helix and analyzed Pensmore's ability to resist a tornado. Defendants seek to prevent Pinkerton from testifying on his confidence interval analysis and his wind analysis.

Defendants argue that Pinkerton's affidavit misrepresents the meaning of the confidence interval testing he performed on the core samples and he should not be allowed to provide this information to the jury. The Court has reviewed Pinkerton's affidavit and report, (Doc. 192-3), and his depositions. (Docs. 192-1, 192-2.) Although the Court questions the accuracy of Pinkerton's discussion of confidence intervals in his affidavit, Pinkerton properly explains the concept and how he applied it in his deposition. (Doc. 192-1, pp. 13-15.) Provided that Pinkerton testifies consistently with his deposition, the Court finds no basis to exclude his testimony based on Rule 702.

Next, Defendants seek to prevent Pinkerton from testifying that Pensmore as constructed cannot survive an EF5 tornado. First, Defendants argue Pinkerton cannot criticize CTL's analysis of Pensmore's ability to resist a tornado because he did not do any analysis or testing of his own. However, the Court agrees with Plaintiffs that the nature of Pinkerton's criticisms of CTL's analysis do not require him to have conducted his own testing. Defendants' arguments go to the weight not the admissibility of his testimony.

Defendants are also concerned that Pinkerton will speculate that Pensmore would not be able to resist projectiles such as cinder blocks, large animals, or 60,000 pound semi-trucks at 300 mph. Pinkerton acknowledges that he is not aware of any FEMA test that involves different

6

projectiles. (Doc. 192-2, p. 20.) Pinkerton also acknowledges that he did not run any tests involving these larger projectiles. (Doc. 192-2, pp. 21-25.) It is improper for Pinkerton to speculate on the results of an unverified test he has not conducted. It is also improper for him to testify that Pensmore was successfully designed to withstand projectiles propelled by 300 mph winds. Thus, Defendant's motion is granted on this point.

Lastly, Defendants argue that Pinkerton should not be allowed to testify that if there is no Helix in Pensmore's roof, then under uplift forces of 300 mph winds there is a "44% reduction in the strength capacity of the roof,"[3] (Doc. 192-4, ¶ 15), because there is no evidence that the roof contains zero Helix and it contradicts his testimony regarding the amount of Helix in the anchor sites. However, Plaintiffs intend to introduce this evidence only to rebut Defendant's expert, who may testify that Pensmore could survive 300 mph winds even if the concrete contained zero Helix. Thus, the testimony could be relevant. Further, any inconsistencies in his testimony go to the weight rather than the admissibility of the testimony.

### D. Mark Gentry

Mark Gentry is an engineer and vice president at Kenrich, a business and litigation consulting firm retained by Defendants to evaluate how the Pensmore project was managed. (Doc. 190-1, p. 4.) Gentry has experience evaluating project management and performing damages analysis. (Doc. 190-1, p. 4.) Plaintiffs argue that Gentry's testimony regarding the environment at the Pensmore construction site is improper.

Plaintiffs argue that Gentry makes inadmissible state-of-mind testimony when he concludes that there was an environment of confusion in the way the Pensmore project was managed. The Court has reviewed Gentry's report, (Doc. 201-2), and testimony, (Doc. 190-2),

---

[3] Defendants also argue that Pinkerton should not be allowed to testify concerning roof uplift analysis because he is not qualified and he relied on updated calculations from an outside engineering firm. The Court rejects these arguments.

and concludes that Gentry does not testify about the state of mind of a specific individual. Gentry opines that the oral communications relating to concrete orders left the project vulnerable to miscommunication, confusion, and mismanagement. Plaintiffs further argue that Gentry's opinion that Pensmore was mismanaged is irrelevant; however, it is relevant to Defendants' argument that a shortage of Helix could be explained by miscommunication or mismanagement. Thus, Plaintiffs' motion to exclude Gentry's report and testimony is denied.

### E. Ryan Clark

Ryan Clark is a founding partner at Hoffman Clark LLC, an accounting firm. Clark is a CPA and has his MBA. (Doc. 190-3, pp. 20-21.) Clark was retained by Defendants to review the damages report by Plaintiffs' expert, David Paris. Plaintiffs criticize Clark's report and argue that he makes a credibility determination about testimony by City Wide employee, Don Shuler, makes an improper determination of liability, and improperly testifies about Plaintiffs' measure of damages.

Plaintiffs first argue that Clark's opinion makes an improper credibility determination about Shuler, who admits he re-sold Helix meant for Pensmore. The Court has reviewed Clark's testimony, (Doc. 190-4), and report, (Doc. 201-5), and concludes that Clark does not make a credibility determination about Shuler's testimony. Clark merely identifies testimony by Shuler that he replaced the Helix he re-sold as a basis for his opinion.

Plaintiffs next argue that Section 3.1 of Clark's report improperly opines on an ultimate question for the jury: whether Defendants engaged in a scheme to short Helix and improperly diverted and resold 75,000 pounds of Helix. Defendants respond that Clark's statements are a proper criticism of Paris' opinions. The Court disagrees with Defendants. Defendants' expert, David Paris, only assumed that the Defendants engaged in a scheme to short Helix for purposes

of his opinions on damages; he did not have an independent opinion on the matter. In contrast, Clark's report contains three pages discussing the evidence regarding the alleged shorting scheme and contains detailed criticism of Plaintiffs' evidence regarding the shorting scheme. The Court agrees with Plaintiffs that this section of Clark's opinion improperly invades the province of the jury, exceeds the scope of Clark's expertise, and is not appropriate. Therefore, the Court will grant Plaintiff's motion as to Section 3.1 of Clark's report – with the exception of the section criticizing Paris' opinion regarding Plaintiffs' unjust enrichment claim.

Finally, Plaintiffs argue Clark should not be permitted to testify about the measure of Plaintiffs' damages. The parties agree that Clark is permitted to criticize Paris and that this testimony is limited to this criticism and that Clark will not present his own calculation of how much, if at all, Plaintiffs were damaged. Thus, the Court need not address this issue further.

For the above reasons, Plaintiffs' motion to exclude Clark's report and testimony is granted in part and denied in part.

### F. David Paris

David Paris is an economist at a consulting firm that specializes in financial consulting services, including the quantification of damages in commercial disputes. (Doc. 157-13, p. 2.) Paris was retained by Plaintiffs to calculate Plaintiffs' damages due to City Wide's alleged shorting of Helix. Paris opines on damages under various theories of liability. Defendants challenge Paris' calculations on the cost to rebuild Pensmore, his calculations for conversion and unjust enrichment, and statements he made about the law on damages.[4] These issues are discussed below.

---

[4] Defendants also challenge Paris' testimony on Plaintiffs' lost opportunity to invest. The argument is moot in light of the Court's previous order dismissing this theory of damages. (Doc. 212.) Paris is precluded from testifying about Plaintiffs' lost opportunity to invest.

9

Defendants first argue that Paris' calculations on the cost to rebuild Pensmore amounts to "simple math within the capacity of the jury" because he based his calculations on expense summaries and merely subtracted "obvious expenses." Plaintiffs argue that to determine the cost to tear down and rebuild Pensmore Paris reviewed thousands of pages of financial documents, added the expense summaries, and applied an index to account for increases in construction costs.[5] The Court concludes that even if Paris only added the check summaries of costs and subtracted obvious costs his testimony is still helpful to the jury as there are multiple expense summaries with hundreds of entries.

Similarly, Defendants argue that Paris' measure of Plaintiff's unjust enrichment damages does not calculate incremental profits; he simply re-states the total of the invoiced sales from Defendants to Plaintiffs. Therefore Defendants argue, it is not "expert" testimony and does not assist the jury. Plaintiffs respond that because Defendants did not incur any costs when providing the sale, there is no distinction between the sales and profits. The Court agrees with Plaintiffs; Paris' testimony on this issue will assist the jury and any issues Defendants have with his calculations can be addressed on cross-examination.

Defendants also take issue with "unverified, conclusory information" (Doc. 194, p. 13) Paris relied upon when creating his report and coming to his conclusions, specifically his assumption that all the costs associated with constructing Pensmore would need to be duplicated if Pensmore was rebuilt.[6] However, Paris is an economist not a construction expert and it is reasonable for him to rely upon statements from Huff or others regarding the construction costs

---

[5] Defendants also challenge Paris' use of the Turner Building Cost Index because they argue he is not qualified to opine on the appropriateness of the test. Defendants do not assert that the Turner index is inappropriate nor do they identify what expertise is required to opine on the appropriateness of the index. Defendants are free to cross-examine Paris on this issue, but this argument goes to the weight of Paris' opinion not its admissibility.

[6] Defendants other criticisms of the source of Paris' information relate to Paris' opinions regarding lost opportunity costs and are moot. To the extent Defendants are critical of information Paris obtained from websites, a review of his report reveals this information was primarily used as background information.

10

that would be duplicated if Pensmore is rebuilt. Again, any weakness in this information is best addressed through cross-examination.

Defendants next argue that Paris' opinion about the cost to tear down and rebuild Pensmore is not based on reliable data. Paris' opinion is based, in part, on the total construction cost incurred from 2008 through 2015. This total is based on check summaries from 2011-2016 and a running total number from prior to 2011. Paris testified that there were no internal business documents reflecting business expenses before June 2011. To support the "pre-2011" portion of the total cost, he relied on a "June 2011 document [that] had a sum paid through May 31st, 2011" and conversations with Steven Huff. (Doc. 194-4, p. 6.) Defendants contend that this is not an adequate basis to establish the costs incurred from 2008 through June 2011 because Paris did not verify that the costs were accurate or actually used to construct Pensmore. Although this evidence is arguably weak and certainly subject to cross examination, it does not make Paris' opinion unreliable to the point it is inadmissible.

With respect to Paris' opinion regarding conversion damages, Defendants argue that he should not be permitted to value Helix at $2.40 per pound. Defendants argue that this is not the reasonable market value because Plaintiffs were able to acquire Helix at $1.70 per pound. Plaintiffs argue that $2.40 per pound was the reasonable market value because that is the price per pound that Ms. Debra Roe paid for the converted Helix used in her home. Reasonable market rate is an issue for the jury and Paris provides a plausible explanation as to his opinion regarding the reasonable market value. Thus, Paris is not precluded from using $2.40 as the price per pound for Helix.

Finally, Defendants seek to exclude portions of Paris' report in which he discusses the law on damages. "Expert testimony on legal matters is not admissible." *Southern Pine*

11

*Helicopters, Inc. v. Phoenix Aviation Managers, Inc.,* 320 F.3d 838, 841 (8th Cir. 2003). In his report, Paris opines as to the proper measure of damages for specific performance, unjust enrichment and conversion. (Doc. 194-1, ¶¶ 31, 46-47.) In his rebuttal report, Paris also opines as to the two possible measures of damages in a construction case and the contractor's burden to prove diminution of value. (Doc. 194-3, ¶ 10.) Paris' statements about the proper measure of damages are impermissible expert testimony on legal matters and thus they are precluded.[7]

### G. Scott Fowler

Plaintiffs endorsed Scott Fowler as a rebuttal witness. In his report, Fowler criticizes the methodology used by and conclusions contained in the report of Defendants' expert Bernie Shaner. Defendants seek to exclude Fowler's testimony on the grounds that he is not qualified to give such testimony and the opinion is speculative. For the following reasons Defendants' motion is denied.

Defendants primarily rely on statements Fowler made during his deposition to argue that he is not qualified to give an opinion in this case. Defendants specifically point out statements Fowler made suggesting that he would not have accepted the job appraising Pensmore and questioning the proper method for determining the market for Pensmore. However, Fowler made these statements in the context of questions regarding comparable properties and the uniqueness of Pensmore. When placed in context, Fowler's responses do not call into question his qualifications as an expert.[8]

---

[7] The Court previously held that specific performance would not require tearing down and rebuilding Pensmore. (Doc. 212, p. 10.) However, Paris may testify about the cost to rebuild Pensmore as it is relevant to other damage theories.

[8] To the extent Defendants argues Fowler lacks general qualifications as an expert based on his lack of experience in residential appraisals or appraising Missouri properties, the motion is denied. Fowler clearly possesses the knowledge, skill, experience, trading and eduction to assist the trier of fact under Rule 702.

Defendants next argue that because Fowler is critical of the analysis used by Shaner but doesn't suggest an alternative approach, his opinion is speculative and will only confuse the jury. However, Defendants' argument fails to acknowledge that Fowler is a rebuttal witness. As a rebuttal witness it is not necessary for Fowler to testify as to his appraisal; rather his testimony is properly limited to his criticisms of Shaner's appraisal. Therefore, the Court finds Fowler's testimony will assist the jury and Defendants' motion is denied.

### III. CONCLUSION

Two of Plaintiffs' Motions, (Docs. 186, 188) and one of Defendants' Motions (Doc. 195) are **DENIED** in their entirety. Plaintiffs' Motion to Strike Expert Reports and Testimony of Mark Gentry and Ryan Clark, (Doc. 190), and Defendants' Motions to Exclude Testimony of Luke Pinkerton, (Doc. 185), and David Paris, (Doc. 193), are **DENIED in part and GRANTED in part.**

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: July 12, 2017